UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF NEW YORK

---------------------------------- X

ALLEN CHASE,                              :          Case No. 5:23-cv-201 (AMN/TWD)

               Plaintiff,            :

vs.                                       :          COMPLAINT

THE CITY OF OSWEGO,                       :

               Defendant.            :          JURY TRIAL DEMANDED

---------------------------------- X

       Plaintiff, ALLEN CHASE, by and through his attorneys, Bousquet Holstein PLLC, alleges and states as follows:

## PRELIMINARY STATEMENT

       Plaintiff, Allen Chase ("Mr. Chase" or "Plaintiff"), brings this action against the City of Oswego ("City" or "Defendant") for violations of the Americans with Disabilities Act as amended by the ADA Amendments Act, 42 U.S.C. §§ 12101 et seq., (collectively, the "ADA"). As alleged herein, Defendant discriminated against Mr. Chase on the basis of his disability, retaliated against him for engaging in protected activities and harassed and created a hostile work environment against him in violation of the of the ADA. Defendant's unlawful actions forced Plaintiff to resign and retire and caused significant damages.

## JURISDICTION

      1.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the ADA and/or 28 U.S.C. § 1343. This action is authorized and instituted pursuant to section 107(a) of the ADA, 42 U.S.C. § 12117(a).

## VENUE

      2.    Venue is proper in the Northern District of New York under 28 U.S.C. § 1391(b)(1), because the City is located within this District. Venue is also proper under 28 U.S.C. § 1391(b)(2) & (3) because a substantial part of the events or omissions giving rise to the claim occurred in this District and because the City is subject to personal jurisdiction in this District with respect to this action, and there is no other District in which the action may otherwise be brought.

## CONDITIONS PRECEDENT

3.     On October 26, 2018, Plaintiff timely filed a charge of disability discrimination with the Equal Employment Opportunity Commission (EEOC).

4.     The EEOC issued a Notice of Right to Sue, dated November 21, 2022, to Plaintiff and this Complaint has been filed within 90 days of receipt of said notice. As such, Plaintiff has fully complied with all prerequisites to jurisdiction in this Court under the ADA.  A copy of Plaintiff's Right to Sue letter is annexed hereto as Exhibit "A."

## PARTIES

5.     Plaintiff is a citizen of the United States, is over the age of 18 and is a resident of the County of Oswego, New York, which is situated within the Northern District of New York.

6.     At all times relevant herein, Plaintiff was an employee of Defendant as this term is defined by the ADA, 42 U.S.C.A. § 12111. Plaintiff was employed by Defendant from 1998 to 2018 as a firefighter. Plaintiff was a Captain for the City of Oswego Fire Department ("Department") in Oswego, New York when his employment ceased in 2018.

7.     Plaintiff is a qualified individual with a disability as defined by the ADA, 42 U.S.C.A. § 12111. At all times relevant, Plaintiff was qualified to perform the essential duties of his position with or without a reasonable accommodation and could perform his essential duties with a reasonable accommodation.

8.     Defendant is a municipality that maintains offices located at 13 West Oneida Street, Oswego, New York.  The Defendant is an employer and a covered entity as these terms are  defined by the ADA, 42 U.S.C.A. § 12111.

9.     Upon information and belief, the Department has no separate existence from the City.

## FACTS

10.     Mr. Chase began working for Defendant in or about August 1998 as a fire fighter.

11.     On or about January 4, 2012, Mr. Chase was promoted to the rank of Captain (hereinafter, "Fire Captain").

12.     Mr. Chase's work performance met or exceeded Defendant's legitimate expectations.  He was promoted to lieutenant and then captain within a twelve (12) month period. In addition, Defendant recognized Mr. Chase's accomplishments by awarding him numerous lifesaving awards for his actions on emergency scenes and a heroism award for saving a drowning victim in the Oswego River. Mr. Chase served as EMS Director for the Department and as Course Sponsors Administrator providing oversight to all EMS Training for Oswego County.  He was also the Department's primary liaison to the New York State Department of Health.

13.     At all times relevant, Mr. Chase has had a peripheral visual field defect that affects the vision in his right eye. He has a permanent partial loss of peripheral vision in his right eye and also experiences transient visual disturbances that cause the episodic loss of peripheral vision and a constricted circular field of vision in his right eye. Plaintiff was first diagnosed with this condition in or about 1985 after he suffered a head injury. As set forth below, Plaintiff developed blurry vision in left eye as well as the right eye beginning in or about 2016, for which he required treatment.

14.     Due to his condition, Mr. Chase is a qualified individual with a disability under the ADA. Mr. Chase's major life activities are substantially limited by his disability, including the partial loss of his peripheral vision in his right eye, which affects his ability to navigate or ambulate, and perform certain daily tasks.  He also experiences episodic blurry vision in his left eye.

15.     Mr. Chase was qualified to perform his essential job duties with or without a reasonable accommodation.

16.     Defendant also perceived Plaintiff as an individual with a disability.

17.     In or about 2016, Mr. Chase's condition caused him to use more of his accumulated sick days than he had in the prior years of his employment in order to seek medical treatment.

18.     Upon information and belief, Mr. Chase used thirty-six (36) sick days in 2016 out of the one hundred and thirty (130) sick days that he had accumulated on or before January 1, 2015.

19.     On or about September 12, 2016, Nancy Sterio, Personnel Director for the City, issued a counseling memorandum to Mr. Chase alleging that his use of sick leave was abusive ("September 2016 Counseling"). Ms. Sterio did not ask Mr. Chase to explain his use of sick leave before or after she issued the September 2016 Counseling. Instead, she alleged that Mr. Chase's use of sick leave was abusive.

20.     Upon information and belief, Ms. Sterio was acting in her capacity as Personnel Director when she issued the September 2016 Counseling. Defendant was aware of Mr. Chase's disability or perceived him to be disabled when Ms. Sterio issued the September 2016 Counseling.

21.     After receiving the September 2016 Counseling, Mr. Chase asked Ms. Sterio to clarify what Defendant considered to be an appropriate use of sick leave. Ms. Sterio did not provide any clarification but directed Mr. Chase to review the collective bargaining agreement between the City and his union, the Oswego Firefighters Association ("Union") instead.

22.     In or about December 2016, Defendant prepared a Notice of Discipline, dated December 27, 2016, that was signed William J. Barlow, Jr., who is the Mayor of the City ("December 2016 NOD"). The December 2016 NOD charged Mr. Chase with misconduct and incompetence in the performance of his duties as Fire Captain and Acting Deputy Fire Chief. It

alleged that Plaintiff's use of his sick leave had impacted the Department and sought to discipline Mr. Chase with a letter of discipline.

23.     Upon information and belief, Defendant caused the Oswego City Police Department to serve Mr. Chase with the December 2016 NOD at his residence on New Year's Day, January 1, 2017.

24.     Upon information and belief, Defendant was aware of Mr. Chase's disability or perceived him to be disabled when it served him with the December 2016 NOD.

25.     Upon information and belief, other employees working in the Department, who were not disabled, used a similar amount of sick time as Mr. Chase but Defendant did not serve them with Notices of Discipline, charge them with misconduct and incompetence or issue counseling memoranda against them.

26.     After the Defendant served Mr. Chase with the December 2016 NOD, the Union retained counsel to represent him ("Union Counsel").

27.     On or about January 12, 2017, Union Counsel sent correspondence to Defendant that included documentation from Mr. Chase's treating physicians showing that his absences were due to his disability. This correspondence also asked Defendant to reconsider the charges levied against Mr. Chase in light of the medical information provided by his physicians.

28.     Upon information and belief, Defendant did not reconsider the charges levied against Mr. Chase but continued to pursue discipline against him instead.

29.     On or about January 17, 2017, the Union served a demand for arbitration on the Defendant appealing the December 2016 NOD.

30.     On or about March 16, 2017, Defendant served Mr. Chase with another counseling memorandum, dated March 16, 2017 ("March 2017 Counseling"), regarding his use of sick leave. Defendant alleged that Mr. Chase continued to use sick leave between February 26, 2016 and December 9, 2016 despite having received the September 2016 Counseling.  Defendant also accused Mr. Chase of abusing his sick leave, and directed him to fulfill the duties of his positions and adhere to the policies of the City and Department.

31.     Upon information and belief, Defendant was aware of Mr. Chase's disability or perceived him to be disabled when it issued the March 2017 Counseling. Defendant was also aware that Mr. Chase was using his sick leave to seek treatment for his disability when it issued the March 2017 Counseling.  The arbitration was still pending when Defendant issued the counseling as the arbitration was not resolved until April 20, 2017.

32.     On or about March 24, 2017, Mr. Chase responded to the March 2017 Counseling and informed the Defendant that the medical documentation that had been provided in response to the December 2016 NOD established that he had used his accumulated sick leave to seek treatment for the medical condition underlying his disability.

33.     Mr. Chase also notified Defendant that the March 2017 Counseling included dates that had been the subject of the September 2016 Counseling and the December 2016 NOD, which was being appealed through the arbitration. Plaintiff further informed Defendant that his use of sick leave was not unusual when compared to the sick leave used by other non-disabled employees, who had used equal or greater amounts of leave without being disciplined.

34.     In or about April 2017, Mr. Chase learned that he could apply for intermittent leave that would allow him to seek treatment for his medical condition as a reasonable accommodation for his disability under the ADA.  Defendant had previously failed to inform Mr. Chase that he was entitled to apply for intermittent leave as an accommodation for his disability.

35.     Mr. Chase later asked Ms. Sterio whether he was eligible for leave under the Family Medical Leave Act ("FMLA") as an accommodation for his condition. Only after Plaintiff asked Ms. Sterio for about this accommodation did she indicate that he was an eligible employee. Thereafter, Ms. Sterio provided Mr. Chase with a certification form to be completed by his physician.

36.     On or about April 6, 2017, Mr. Chase submitted the certification from his treating physician seeking intermittent leave as a reasonable accommodation for his disability.

37.     On or about May 5, 2017, Ms. Sterio informed Mr. Chase that he was required to execute a HIPAA release that would permit the City to have access to all of his medical records. When Mr. Chase questioned why the release of all his records was necessary, Ms. Sterio indicated that she had questions for his physician. She also admitted that he did not need to permit the disclosure of all his medical records to Defendant. Mr. Chase offered to answer her questions directly.

38.     On May 12, 2017, Ms. Sterio sent Mr. Chase an email directing him to send her the completed medical releases by May 17, 2017 or be subject to further discipline.

39.     Upon information and belief, the Union's President spoke directly to Ms. Sterio on or about May 16, 2017 regarding Mr. Chase's request for intermittent leave.

40.     On or about May 17, 2017, Ms. Sterio sent Mr. Chase correspondence directing him to provide her with additional information about his medical condition within seven (7) days. Ms. Sterio also stated that she questioned whether he could perform the essential duties of his position based upon the information contained in the certification seeking intermittent leave as an accommodation for his disability.

41.     On or about May 23, 2017, Mr. Chase submitted an addendum, dated May 22, 2017, which responded to Ms. Sterio's questions about his medical condition. The addendum was signed by Mr. Chase's treating physician, who described Mr. Chase's condition and its symptomology. The physician indicated that Mr. Chase had been experiencing blurry vision in his left eye, as well as his right. The Physician also indicated that Mr. Chase had no work restrictions on most days but he required intermittent leave for treatment and on days when he experienced episodes of blurry vision.

42.     In or about May 2017, Mr. Chase informed Ms. Sterio that his supervisors and co-workers were harassing him regarding his use of sick leave. Mr. Chase specifically informed Ms. Sterio that his co-workers had hidden his turnout gear, made derogatory remarks about him during meetings, filled his fire boots with cement, and had ordered pornographic materials to be delivered to the fire station in his name for the purpose of subjecting him to further discipline.

43.     The harassment that Mr. Chase reported to Ms. Sterio was taken because Plaintiff sought a reasonable accommodation under the ADA and engaged in protected activities.

44.     Mr. Chase also informed Ms. Sterio that the discipline levied against him for his absences was inappropriate.

45.     Upon information and belief, Ms. Sterio failed to take any corrective action in response to Mr. Chase's complaint about harassment at the workplace.

46.     Upon information and belief, Ms. Sterio also directed the Oswego police to investigate the delivery of pornographic materials to Mr. Chase at the fire station and told the investigator that she wanted him to find evidence that Mr. Chase had ordered the materials himself.

47.     Upon information and belief, Fire Chief Randall Griffin had notice of and condoned the harassment that Mr. Chase reported to Ms. Sterio and the retaliation that he experienced.

48.     On or about June 9, 2017, Ms. Sterio sent correspondence to Mr. Chase directing him to provide a statement from his treating physician indicating he was "unequivocally fit" to perform his duties in accordance with the job description for his position as Fire Captain. Ms. Sterio required Mr. Chase to produce a statement regarding his fitness for duty despite the fact that his physician had already indicated that Mr. Chase had no work restrictions on most days and that the request for intermittent leave related to his disability.

49.     On or about June 15, 2017, Mr. Chase responded to Ms. Sterio's June 9, 2017 correspondence stating that he would provide a statement from his physician but that her request was improper and should not be related to his application for intermittent leave.

50.     In or about early July 2017, Fire Chief Griffin ordered Mr. Chase to attend a meeting with the himself and Assistant Chief Jon Chawgo. During the meeting, Fire Chief Griffin stated that he was aware that Mr. Chase's medical condition would require him to take sick leave periodically and then directed Mr. Chase to track the absences that were due to his disability. Following this meeting, Mr. Chase believed that Defendant had granted his request for intermittent leave as a reasonable accommodation for his disability.

51.     In or about 2017, Mr. Chase had been working as Acting Deputy Chief after the former Deputy Chief retired. When an active civil service list was created for the vacant position, Mr. Chase was ranked as the first ranked applicant on the list due to his civil service test score. He was also the most senior applicant.

52.     After the civil service ranking was posted, Mr. Chase's co-workers informed him that Defendant did not intend to appoint him to the Deputy Chief position because of the sick leave that he had taken in order to receive treatment for his disability.

53.     On or about July 26, 2017, Ms. Sterio sent Mr. Chase a letter stating that he was disqualified for the Deputy Chief position because he had not appeared for an interview with Fire Chief Griffin and herself. According to the letter, the interview had been scheduled for the same day, July 26, 2017 at 9:00 a.m.

54.     Mr. Chase did not appear for the interview because Defendant failed to notify him about it. Defendant failed to inform Plaintiff about his interview for the Deputy Chief position because Mr. Chase has a disability. Defendant's actions were also taken in retaliation for Mr. Chase seeking intermittent leave as a reasonable accommodation and for engaging in protected activities. Mr. Chase asked to be removed from consideration for this position after Defendant disqualified him.

55.     Between July 2017 to December 2017, Mr. Chase was absent intermittently due to his medical condition. Defendant did not question Mr. Chase about his absences during that time period.

56.     On or about December 26, 2017, Fire Chief Griffin sent Mr. Chase a letter directing him to provide a physician's note confirming the necessity for his use of sick time and fitness for duty.  On the same day, Mr. Chase responded to Fire Chief Griffin via email indicating that his absence was related to the intermittent leave that he requested as a reasonable accommodation for his disability.

57.     On or about December 28, 2017, Ms. Sterio sent Mr. Chase an email stating that his leave had not been approved and directing him to provide the information sought in Fire Chief Griffin's letter dated December 16, 2017.

58.     On or about January 2, 2018, Mr. Chase responded to Ms. Sterio's December 28, 2017 email indicating that Defendant never informed him that it had not approved his request for intermittent leave. He further stated that he believed his application for leave was complete and that the City's failure to approve it was unlawful.

59.     On January 8, 2018, Mr. Chase sent further correspondence to Ms. Sterio explaining that he believed his request for intermittent leave was complete.  He also objected to Defendant's threat to discipline him if he did not execute a HIPAA authorization allowing it to contact his physician.

60.     On or about February 12, 2018, Mr. Chase filed a written complaint with the United States Department of Labor ("USDOL") alleging, *inter alia,* that Defendant had intentionally delayed and ignored his application seeking intermittent leave.

61.     On or about February 12, 2018, Mr. Chase notified Fire Chief Griffin and Ms. Sterio verbally that he had filed a complaint with the USDOL.

62.    On or about February 15, 2018, the City approved Mr. Chase's request for intermittent leave. The Defendant approved Mr. Chase's request after he notified Defendant that he filed a complaint with USDOL.

63.    Approximately twelve (12) days after Defendant approved his request for intermittent leave, Defendant served Mr. Chase with another Notice of Discipline, dated February 27, 2018 ("February NOD"). In the February NOD, Defendant charged Mr. Chase with misconduct for allegedly violating an order requiring him not to respond to emergency calls while on light duty. The February NOD also charged Mr. Chase with endangering the public while responding to an emergency. Prior to the February NOD, Defendant had never charged Mr. Chase with misconduct related to his actions while on a fire scene.

64.    Upon information and belief, the Defendant caused the Oswego police to attempt to serve the February NOD on Mr. Chase at his residence at approximately 2 a.m. The police had also been directed to serve the February NOD on Mr. Chase that morning without exception. In the past, the Oswego police did not serve Notices of Discipline on members of the Department.

65.    On or about March 1, 2018, Ms. Sterio sent correspondence directing Mr. Chase to appear at Defendant's Personnel Department on Friday, March 2, 2018 at 2:00 pm. The letter also indicated that Mr. Chase was entitled to bring a representative to this meeting.

66.    On or about March 2, 2018, Ms. Sterio informed Mr. Chase that Defendant was suspending him for thirty (30) days without pay. Ms. Sterio also provided Mr. Chase with a letter and personnel form, dated March 1, 2018, indicating that he had been suspended and was prohibited from entering any of the City's buildings, including the East and West Side Fire Stations, unless specifically authorized by Fire Chief Griffin or herself.

67.    On or about March 2, 2018, Fire Chief Griffin sent a memorandum to all members of the Department stating that Mr. Chase had been suspended "until further notice" and was prohibited from entering any City facility, including the fire stations, without "express permission of the Chief of Fire."

68.    Upon information and belief, Defendant charged Mr. Chase with misconduct in the February NOD and then suspended him because Plaintiff has a disability and/or because Defendant perceived his as being disabled. Defendant also took these actions against Mr. Chase because he requested intermittent leave as a reasonable accommodation for his disability. Defendant's actions were intended to prevent Mr. Chase from actually taking any intermittent leave as an accommodation for his disability. They were also taken against Mr. Chase in retaliation for engaging in protected activities, including filing a complaint with the USDOL.

69.    After Defendant served Mr. Chase with the February NOD and charged him with misconduct, his Union attorney attempted to resolve these matters with the City.

70.    On or about March 26, 2018, Defendant presented a settlement offer to Mr. Chase that required him to resign his employment and retire on August 8, 2018, which was the earliest date when he was eligible to retire under the terms of his pension system. Mr. Chase rejected this

8

settlement proposal because he wanted to continue his employment with the Department and because retiring on August 8, 2018 would adversely affect the value of his pension benefits.

71.     On or about March 28, 2018, Ms. Sterio sent Mr. Chase correspondence indicating that his suspension would be changed to paid leave pending an on-going disciplinary issue. The change did not become effective until April 2, 2018.  She sent a similar letter to Mr. Chase on or about March 30, 2018.  Under the Union's collective bargaining agreement with the City,  Defendant was required to place Mr. Chase on paid leave after thirty (30) days.

72.     Upon information and belief, an investigator from the USDOL had met with Ms. Sterio on or before March 28, 2018 and informed her that the Defendant had not responded properly to Mr. Chase's application for intermittent leave. The investigator also indicated that the Defendant should rescind all disciplinary actions taken against Mr. Chase, remove him from suspension, pay his back wages and return him to full active duty.

73.     Upon information and belief, the same investigator met with Fire Chief Griffin and Mayor Barlow as part of the USDOL's investigation of the complaint that Mr. Chase filed.

74.     On or about April 2, 2018, Defendant presented another settlement offer to Mr. Chase that again required him to resign and retire on August 8, 2018. Defendant also required Mr. Chase to accept this second settlement offer on the same day or it would be withdrawn. Mr. Chase rejected this offer for the same reasons that he rejected Defendant's prior settlement offer.

75.     Upon information and belief, Defendant also charged Mr. Chase with misconduct and suspended him in order to pressure Mr. Chase to resign.

76.     In or about March 2018, Ms. Sterio had directed Mr. Chase to update his physician's certification, claiming that it was out of date. On or about April 6, 2018, Mr. Chase resubmitted the certification after it had been completed by his treating physician. The certification contained the same health information as the original certification that Mr. Chase submitted to Ms. Sterio in or about April 2017.

77.     On or about April 3, 2018, the USDOL investigator informed Mr. Chase that he was negotiating an agreement whereby Defendant would rescind all discipline related to his use of sick leave and drop the charges in the February NOD. Defendant would also grant Mr. Chase's request for intermittent leave, pay him back pay and restore him to full active duty. The final terms of this agreement were reached on or about April 6, 2018.  Defendant did not allow Mr. Chase to return to work on April 6, 2018.

78.     Upon information and belief, Defendant was aware of its agreement with the USDOL when it made the second settlement proposal on April 2, 2018 that required Mr. Chase to retire and withdraw his complaint to the USDOL. Upon information and belief, Defendant was also aware of its agreement with the USDOL when it required Mr. Chase to accept the settlement offer on April 2, 2018.

79.     On or about April 12, 2018, Ms. Sterio sent Mr. Chase further correspondence stating that the recertification submitted on April 6, 2018 was incomplete and directing Mr. Chase to provide additional information. The letter included a Designation Notice and an

attachment showing "a history of absences" that Defendant claimed were related to his medical condition. The letter further directed Mr. Chase to have his physician confirm that these absences were due to his medical condition and confirm that the need for leave was consistent with the "leave pattern" shown in the attachment. Ms. Sterio required Mr. Chase to respond by no later than April 20, 2018, which was only eight (8) days later.

80.     On or about May 3, 2018, Ms. Sterio gave Mr. Chase a letter indicating that Defendant would not grant Mr. Chase the intermittent leave that he had requested until it received a "sufficient" recertification. The Defendant had not allowed Mr. Chase to return to work between April 6, 2018 and May 3, 2018 despite reaching an agreement with the USDOL to allow him to return to work.

81.     Also, on or about May 3, 2018, Ms. Sterio gave Mr. Chase a letter from Mayor Barlow directing him to undergo an independent medical examination ("IME") pursuant to Civil Service Law § 72 (1) to determine his fitness for duty. The letter also stated that Mr. Chase was not fit to perform the duties of Fire Captain and this this determination was based upon the medical information that he had provided to Ms. Sterio as part of his request for intermittent leave.

82.     Mayor Barlow's May 3, 2018 correspondence also stated that it was his judgment that Mr. Chase was not physically fit to perform his duties as a Fire Captain. It further directed Mr. Chase to complete a HIPAA-compliant authorization permitting the release of all of Mr. Chase's medical records.

83.     In addition, the May 3, 2018 correspondence indicated that Mr. Chase was on immediate involuntary unpaid leave because he was a danger to himself and others. Defendant placed Mr. Chase on leave even though it had entered into the agreement with the USDOL, which required the City to grant his request for intermittent leave and to return him to full active duty.

84.     Upon information and belief, the Defendant was aware of Mr. Chase's medical condition and disability, and/or perceived him as disabled, when it determined that Mr. Chase was unfit for duty and placed him on unpaid leave. Defendant did not have any new medical information showing a change in Mr. Chase's medical condition and disability when it took the foregoing actions against Mr. Chase.

85.     Defendant's actions were discriminatory and taken in retaliation after he engaged in protected activities. Defendant's actions were also intended to create a hostile work environment for Mr. Chase and prevent him from actually taking any intermittent leave as an accommodation for his disability.

86.     On or about May 14, 2018, Mr. Chase sent an email to Ms. Sterio regarding Defendant's actions placing him on involuntary unpaid leave. In this email, Mr. Chase reminded Ms. Sterio that Defendant had been aware of his medical condition and that he had been able to perform his duties throughout his career. He also notified Ms. Sterio that he had been harassed about his disability and that Defendant had taken actions against him that were discriminatory, retaliatory and violated his legal rights. Mr. Chase further notified Ms. Sterio that Defendant's

actions were retaliatory and constituted disability-based discrimination. Mr. Chase also stated that he intended to file federal and state complaints regarding Defendant's acts.

87.     Upon information and belief, neither Ms. Sterio nor Defendant took any action to address Mr. Chase's complaint about the discrimination, retaliation, harassment and hostile work environment that he experienced during his employment. Defendant also failed to remove Mr. Chase from involuntary leave and then compelled him to submit to an IME.

88.     On or about May 20, 2018, Mr. Chase sent HIPAA authorizations to Ms. Sterio via email permitting the Defendant access to his medical records. In this email, Mr. Chase stated that he provided the authorizations due to Defendant's threat of further discipline and that Defendant was violating his legal rights.

89.     On or about May 30, 2018, Carlos O. Dator, M.D. issued a Statement of Physical and Fitness indicating that Mr. Chase was fit for duty.  Dr. Dator's determination was part of the annual physical required for all members of the Department to determine fitness for duty. Upon information and belief, the Defendant received a copy of Dr. Dator's statement.

90.     After Dr. Dator determined that he was fit for duty, Mr. Chase received a notice from UMC Medical Consultants, P.C. dated May 31, 2018 indicating that Defendant had ordered an IME, which would be conducted by a neurologist and was scheduled for June 25, 2018. Mr. Chase appeared for the IME as scheduled and Defendant's neurologist determined that he was fit for duty.

91.     In or about June 2018, Defendant made further settlement offers to the Union's attorney.  Defendant's proposals required Mr. Chase to use his accrued leave until he was eligible to retire on August 8, 2018. Defendant was not willing to allow Mr. Chase to return to work. Mr. Chase rejected these offers because, *inter alia,* he wanted to continue working for many more years in order to increase the amount of his pension benefits.

92.     On or about June 17, 2018, Mr. Chase advised Ms. Sterio that he had contacted the EEOC to file a complaint alleging disability-based discrimination and retaliation.

93.     Upon information and belief, Ms. Sterio mailed a letter dated July 3, 2018 to Mr. Chase ordering him to return to work on Monday, July 9, 2018. The letter also indicated that Mr. Chase would work Shift "D" on Thursday, July 12, 2018 if he completed all required training beforehand.  Thereafter, Defendant required Mr. Chase to undergo a reorientation/retraining program, which included a week-long physical ability challenge and sessions in the Chief's office, where he was tested on Department protocols and procedures.

94.     On or about July 9, 2018, Chief Chawgo telephoned Mr. Chase stating that he had been directed to return to work on that day and that Ms. Sterio had sent him a return-to-work letter. Although the letter was mailed to his residence, Mr. Chase did not receive it by July 9, 2018 because he was staying at another location in Oswego, New York temporarily.

95.     On or about the morning of July 8, 2018, Mr. Chase saw Chief Chawgo at a restaurant called the Office Tavern. Chief Chawgo did not inform Mr. Chase that he had been directed to return to work while they were both at the Office Tavern.

96.     When Mr. Chase returned to work, members of the Department informed him that he was a target and that Defendant intended to terminate his employment.

97.     After Mr. Chase returned to work, the Defendant did not permit him to work overtime pursuant to past practices which affected his compensation and retirement benefits.

98.     Defendant intentionally engaged in the foregoing discriminatory, retaliatory and harassing actions in order to create work conditions that were so intolerable that Mr. Chase was compelled to resign his employment and retire effective August 23, 2018. Mr. Chase's decision to resign was reasonable under the circumstances.

99.     On or about October 29, 2018, Mr. Chase filed a Charge with the EEOC alleging that Defendant discriminated and retaliated against him due to his disability in violation of the ADA along with other federal, state and local laws prohibiting discrimination.

100.     On or about February 13, 2021, the EEOC issued a determination on the merits of Mr. Chase's Charge. It determined that Defendant is an employer within the meaning of the ADA and that Mr. Chase is an individual with a disability who has a record of disability. It further determined that Mr. Chase requested intermittent leave as a reasonable accommodation for his disability in or about April 2017 and that he engaged in protected activities when he requested intermittent leave and filed his complaint with the USDOL.

101.     The EEOC also determined that Defendant's actions against Mr. Chase were discriminatory and retaliatory. The EEOC further found that Defendant's conduct caused Mr. Chase's constructive discharge from his employment and concluded that there was reasonable cause to believe the Defendant violated the ADA after Mr. Chase sought reasonable accommodations.

102.     The EEOC subsequently issued a Notice of Right to Sue letter.

## COUNT ONE

### (Discrimination in Violation of the Americans with Disabilities Act)

103.     Mr. Chase repeats and realleges paragraphs 1 through 102 hereof, as if fully set forth herein.

104.     ADA prohibits discrimination against people with disabilities in several areas, including employment.

105.     Mr. Chase is a "qualified individual with a disability" within the meaning of 42 U.S.C. § 12111 of the ADA due to the condition with vision.

106.     Mr. Chase's major life activities are substantially limited by his disability. The major life activities affected by Mr. Chase's disability include episodic partial loss of his vision as alleged, which affects his ability to navigate or ambulate, and perform certain daily tasks.

107.   Mr. Chase was qualified to perform the essential functions of his position as a Fire Captain with or without a reasonable accommodation and could perform said duties with a reasonable accommodation.

108.   At all times relevant, Defendant was aware of Mr. Chase's disability and/or perceived him as having a disability.

109.   On or about April 6, 2017, Mr. Chase applied for intermittent leave as a reasonable accommodation for his disability and could perform his essential duties with said reasonable accommodation.

110.   Defendant did not inform Mr. Chase that his request for a reasonable accommodation was an undue hardship.  Defendant also did not engage in the interactive process regarding Mr. Chase's request for said reasonable accommodation.

111.   On or about May 12, 2017, Ms. Sterio threatened Mr. Chase with discipline.

112.   On or about July 26, 2017, Defendant disqualified Mr. Chase for the Deputy Chief position.

113.   Defendant did not grant Mr. Chase's request for intermittent leave as a reasonable accommodation for over ten (10) months after he first applied.

114.   On or about February 27, 2018, Defendant served Mr. Chase with the February NOD charging him with misconduct.

115.   On or about March 2, 2018, Defendant suspended Mr. Chase for thirty (30) days without pay.

116.   Between March 26, 2018 and June 2018, Defendant made multiple settlement offers that required Mr. Chase to resign his employment and retire on August 8, 2018.

117.   On or about April 6, 2018, the USDOL reached an agreement with Defendant whereby the City would rescind all discipline related to his use of sick leave, drop the charges in the February NOD and grant Mr. Chase's request for intermittent leave as a reasonable accommodation, pay him back pay and restore him to full active duty.

118.   Upon information and belief, Defendant was aware of its pending agreement with the USDOL when it made the second settlement proposal on April 2, 2018, which required Mr. Chase to retire and withdraw his complaint to the USDOL. Defendant was also aware of its agreement with the USDOL when it required Mr. Chase to accept the settlement offer on April 2, 2018.

119.   On or about May 3, 2018, Ms. Sterio sent Mr. Chase a letter indicating that Defendant would not grant Mr. Chase the intermittent leave he had requested until it received a "sufficient" recertification.

120.    On or about May 3, 2018, Ms. Sterio gave Mr. Chase correspondence from Mayor Barlow declaring that he was not fit for duty and directing him to undergo an IME.

121.    On or about May 3, 2018, Defendant placed Mr. Chase on immediate involuntary unpaid leave claiming that he was a danger to himself and others.

122.    By the acts and conduct described above and throughout the Complaint, Defendant discriminated against Mr. Chase in violation of the ADA.

123.    Based on the acts and conduct described above and throughout the Complaint Defendant discriminated against Mr. Chase when it failed to provide him with intermittent leave as a reasonable accommodation for his disability over the course of months and then engaged in adverse employment actions to prevent him from using said intermittent leave once it was eventually granted.

124.    Defendants failed to provide Mr. Chase with a reasonable accommodation and then prevented him from using his accommodation as alleged because he has a disability and/or because Defendant perceived Mr. Chase as disabled.

125.    As a direct and proximate result of Defendant's discriminatory actions, Mr. Chase suffered damages, including past and future lost wages, lost compensation, lost overtime, lost retirement and other benefits, psychological harm, emotional distress, other damages along with the cost of bringing this action and attorney's fees.

126.    Defendant intentionally violated Mr. Chase's rights under the ADA due to his disability with willful or wanton negligence, malice or reckless indifference, and/or a conscious disregard of Mr. Chase's rights, which violates the ADA (42 U.S.C.A. §§ 12101 et seq.).  As a result, Defendant is liable for punitive damages.

## COUNT TWO

### (Discrimination in Violation of the Americans with Disabilities Act)

127.    Mr. Chase repeats and realleges paragraphs 1 through 126 hereof, as if fully set forth herein.

128.    ADA prohibits discrimination against people with disabilities in several areas, including employment.

129.    Mr. Chase is a "qualified individual with a disability" within the meaning of 42 U.S.C. § 12111 of the ADA due to the condition with vision.

130.    Mr. Chase's major life activities are substantially limited by his disability. The major life activities affected by Mr. Chase's disability include episodic partial loss of his vision as alleged, which affects his ability to navigate or ambulate, and perform certain daily tasks.

131.    Mr. Chase was qualified to perform the essential functions of his position as a Fire Captain with or without a reasonable accommodation and could perform said duties with a reasonable accommodation.

132.   At all times relevant, Defendant was aware of Mr. Chase's disability and/or perceived him as having a disability.

133.   On or about April 6, 2017, Mr. Chase applied for intermittent leave as a reasonable accommodation for his disability and could perform his essential duties with said reasonable accommodation.

134.   Defendant did not inform Mr. Chase that his request for a reasonable accommodation was an undue hardship.  Defendant also did not engage in the interactive process regarding Mr. Chase's request for said reasonable accommodation.

135.   On or about May 12, 2017, Ms. Sterio threatened Mr. Chase with discipline.

136.   On or about July 26, 2017, Defendant disqualified Mr. Chase for the Deputy Chief position.

137.   Defendant did not grant Mr. Chase's request for intermittent leave as a reasonable accommodation for over ten (10) months after he first applied.

138.   On or about February 27, 2018, Defendant served Mr. Chase with the February NOD charging him with misconduct.

139.   On or about March 2, 2018, Defendant suspended Mr. Chase for thirty (30) days without pay.

140.   Between March 26, 2018 and June 2018, Defendant made multiple settlement offers that required Mr. Chase to resign his employment and retire on August 8, 2018.

141.   On or about April 6, 2018, the USDOL reached an agreement with Defendant whereby the City would rescind all discipline related to his use of sick leave, drop the charges in the February NOD and grant Mr. Chase's request for intermittent leave as a reasonable accommodation, pay him back pay and restore him to full active duty.

142.   Upon information and belief, Defendant was aware of its pending agreement with the USDOL when it made the second settlement proposal on April 2, 2018, which required Mr. Chase to retire and withdraw his complaint to the USDOL. Defendant was also aware of its agreement with the USDOL when it required Mr. Chase to accept the settlement offer on April 2, 2018.

143.   On or about May 3, 2018, Ms. Sterio sent Mr. Chase a letter indicating that Defendant would not grant Mr. Chase the intermittent leave he had requested until it received a "sufficient" recertification.

144.   On or about May 3, 2018, Ms. Sterio gave Mr. Chase correspondence from Mayor Barlow declaring that he was not fit for duty and directing him to undergo an IME.

145.   On or about May 3, 2018, Defendant placed Mr. Chase on immediate involuntary unpaid leave claiming that he was a danger to himself and others.

146.    By the acts and conduct described above and throughout the Complaint, Defendant discriminated against Mr. Chase in violation of the ADA.

147.    Based on the acts and conduct described above and throughout the Complaint Defendant discriminated against Mr. Chase when it treated him differently from other employees who were not disabled and when it engaged in the adverse employment actions and conduct alleged in the Complaint. Defendant's conduct was based upon Mr. Chase's disability and/or perception that he was disabled.

148.    As a direct and proximate result of Defendant's discriminatory actions, Mr. Chase suffered damages, including past and future lost wages, lost compensation, lost overtime, lost retirement and other benefits, psychological harm, emotional distress, other damages along with the cost of bringing this action and attorney's fees.

149.    Defendant intentionally violated Mr. Chase's rights under the ADA due to his disability with willful or wanton negligence, malice or reckless indifference, and/or a conscious disregard of Mr. Chase's rights, which violates the ADA (42 U.S.C.A. §§ 12101 et seq.).  As a result, Defendant is liable for punitive damages.

**COUNT THREE**

**(Retaliation in Violation of the Americans with Disabilities Act)**

150.    Mr. Chase repeats and realleges paragraphs 1 through 149 hereof, as if fully set forth herein.

151.    Mr. Chase engaged in protected activities which include, but are not limited to:

(a)    objecting to the disciplinary charges brought against him by Defendant in September 2016, after he used his sick time to seek treatment for his disability;

(b)    opposing the charges levied against him by the Defendant in the December 2016 NOD, wherein it charged him with misconduct and incompetence for the excessive use of sick leave;

(c)    opposing the charges levied against him in the March 2017 Counseling which related to his use of sick leave for treatment of his disability;

(d)    making an internal complaint to Ms. Sterio in May 2017 stating that he was being harassed due to his use of sick leave and complaining that the disciplines levied against him by Defendant were improper;

(e)    objecting to Ms. Sterio's demands for full access to his medical information and threats of discipline;

(f)    filing a written complaint with the USDOL;

(g)    opposing the charges levied against him by the Defendant in the February NOD;

(h)     opposing his suspension by the Defendant on March 2, 2018; and

(i)     opposing his placement on involuntary unpaid leave and opposing the charges levied against him on May 3, 2018.

152.    Defendant was aware the Mr. Chase engaged in protected activities, as alleged herein and throughout the Complaint.

153.    Defendant took adverse employment actions against Mr. Chase and retaliated against him when it engaged in the actions alleged throughout the Complaint, including but not limited to:

(a)     levying multiple disciplinary and misconduct charges against Mr. Chase;

(b)     improperly determining that Mr. Chase was unfit for duty and suspending him;

(c)     compelling Mr. Chase to undergo an IME;

(d)     refusing to grant Mr. Chase's request for intermittent leave as a reasonable accommodation for his disability, as alleged herein;

(e)     taking actions intended to prevent Mr. Chase from using intermittent leave, as alleged herein;

(f)     pressuring Mr. Chase in order to compel him to resign his employment and retire; and

(g)     creating a hostile work environment for Mr. Chase in order to compel him to resign his employment and retire.

154.    Defendant engaged in the foregoing adverse actions and those alleged throughout the Complaint because Mr. Chase engaged in the protected activities, as alleged. The adverse actions taken by Defendant were causally connected as established by their temporal proximity and the disparate treatment that Mr. Chase received.

155.    As a direct and proximate result of Defendant's discriminatory actions, Mr. Chase suffered damages, including past and future lost wages, lost compensation, lost overtime, lost retirement and other benefits, psychological harm, emotional distress, other damages along with the cost of bringing this action and attorney's fees.

156.    Defendant also intentionally violated Mr. Chase's rights under the ADA due to his disability with willful or wanton negligence, malice or reckless indifference, and/or a conscious disregard of Mr. Chase's rights, which violates the ADA (42 U.S.C.A. §§ 12101 et seq.).  As a result, Defendant is liable for punitive damages.

## COUNT FOUR

### (Hostile Work Environment in Violation of the Americans with Disabilities Act)

157.    Mr. Chase repeats and realleges paragraphs 1 through 156 hereof, as if fully set forth herein.

158.    By the acts and conduct described herein and throughout the Complaint, Defendant created a workplace for Mr. Chase that was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of his employment were thereby altered.

159.    As alleged herein and throughout the Complaint, Defendant had full knowledge of the hostile and discriminatory environment that existed for individuals with disabilities and/or perceived disabilities, including Mr. Chase, and allowed this environment to exist.

160.    Defendant discriminated against Mr. Chase in violation of the ADA by creating said hostile and discriminatory work environment.

161.    As a direct and proximate result of Defendant's discriminatory actions, Mr. Chase suffered damages, including past and future lost wages, lost compensation, lost overtime, lost retirement and other benefits, psychological harm, emotional distress, other damages along with the cost of bringing this action and attorney's fees.

162.    Defendant also intentionally violated Mr. Chase's rights under the ADA due to his disability with malice or reckless indifference, which violates the ADA (42 U.S.C.A. §§ 12101 et seq.).  As a result, Defendant is liable for punitive damages.

### DEMAND FOR A TRIAL BY JURY

163.    Mr. Chase repeats and realleges paragraphs 1 through 162 hereof, as if fully set forth herein.

164.    Mr. Chase hereby demands a trial by jury on all counts and issues so triable.

**WHEREFORE**, Plaintiff, Allen Chase, prays to this Court for the following relief for each of his causes of action:

(a)    A declaration that Defendant violated Plaintiff's rights as secured by the Americans with Disabilities Act;

(b)    An order reinstating Plaintiff;

(c)    An award to Plaintiff for all damages available under the law, including, but not limited to, all back pay, front pay, salary, wages, overtime, retirement benefits and all other benefits;

(d)    An award of all compensatory damages, including but not limited to, pecuniary losses, psychological harm, emotional pain and suffering, inconvenience,

mental anguish, loss of enjoyment of line and all other such damages to which Plaintiff is entitled under the Americans with Disabilities Act in an amount to be determined at trial, but not more than the applicable limited of 42 U.S.C. 1981a;

(e)     An award of all punitive damages to which Plaintiff is entitled under the Americans with Disabilities Act in an amount to be determined at trial, but not more than the applicable limits of 42 U.S.C. 1981a;

(f)     An award of interest;

(g)     An award of all costs and reasonable attorneys' fees incurred in connection with this action; and

(h)     Grant to Plaintiff all such additional or alternative relief as to this Court seems just and proper and to the maximum extent available under law or equity.

Dated: February 15, 2023

BOUQUET HOLSTEIN

John L. Valentino, Esq.
Bar Roll Number 501070
Lawrence M. Ordway, Jr., Esq.
Bar Roll Number 509310
Attorneys for Plaintiff
110 West Fayette Street
Suite 1000
Syracuse, New York  13202
Tel: (315) 422-1500

6187494.8

**EXHIBIT  A**

November 21, 2022

**VIA EMAIL:** Achase@chase-corp.com

Allen Chase
36 West Shore Oaks Drive
Oswega, NY  13126

     Re:    EEOC Charge Against:    City of Oswego Fire Department
            EEOC No.:                525-2018-01100

Dear Mr. Chase:

### NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

Because you filed the above charge with the Equal Employment Opportunity Commission, and the Commission has determined that it will not be able to investigate and conciliate that charge within 180 days of the date the Commission assumed jurisdiction over the charge, and the Department has determined that it will not file any lawsuit(s) based thereon within that time, and because you or your attorney has specifically requested this Notice, you are hereby notified that you have the right to institute a civil action against the above-named respondent under Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. 12111, et seq. If you choose to commence a civil action, such suit must be filed in the appropriate court within 90 days of your receipt of this Notice. This should not be taken to mean that the Department has made a judgment as to whether or not your charge is meritorious.

If you or your attorney has any questions concerning this matter or wish to inspect the investigative file, please address your inquiry to: Buffalo Local Office, U.S. Equal Employment Opportunity Commission.

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):**   The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. .A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**
- ➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
- ➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions,** such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.**
- ➢ **Only one** major life activity need be substantially limited.
- ➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
- ➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or "**in remission**" (e.g., cancer) is a disability if it **would be substantially limiting when active**.
- ➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**
- ➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
- ➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment it to be substantially limiting.

3